ISAAC WELLS and JOHN SEARS

*v.*

MERCIE H. MILLER.

1. SALE OF PROPERTY. A father being at the point of death on a barge loaded with lumber belonging to him, gave to his son, who was with him, a bill of sale of the lumber, and directed him, in the instrument, to pay from the proceeds of the lumber a balance due to the persons from whom it was purchased. The son was of age and the father was to some extent indebted to him. Held, no fraud being shown, that the administratrix of the father acquired no title to the lumber by her letters of administration.

2. PRACTICE—*diligence in searching for written instruments.* Where an instrument has never been in the the custody or control of a party wishing to use it, and is of such a character that the law does not presume it to have been in his control, he will not be required to show a diligent search among his papers before giving parol evidence of its contents.

3. SAME. Where it appears that the *duces tecum* clause in a subpœna would have been unavailing, there is no want of diligence in failing to insert it.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was an action of trover brought by Mercie H. Miller, administratrix of Joseph C. Miller, deceased, against Isaac Wells and John Sears, impleaded with John S. Noble, at the April term, 1862. The jury found a verdict against Wells & Sears for $2,100, whereupon they appealed. The facts appear in the opinion of the court.

Messrs. BONNEY, MARTIN & BURNHAM for appellants.

Mr. J. S. PAGE for appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

In April 1860, Joseph C. Miller, now deceased, bought of Wells & Sears, the plaintiffs in error, a quantity of lumber, paying a part of the purchase money, and leaving about $1,400 due. Miller, with his son Franklin, took the lumber to St. Louis, where he shipped it on a barge for Memphis. The barge was wrecked upon the rocks near the town of Commerce, in Missouri. Miller died upon the wreck, and Franklin, leaving the boat and lumber in temporary charge of the pilot, returned to Chicago. It was then determined by him and Wells & Sears, to send an agent immediately to take charge of the lumber, transport it to Memphis and sell it. Noble, one of the defendants below, and an employee of Wells & Sears, was sent for this purpose, bearing a letter from Franklin to the person left by him in charge of the lumber, informing him that Noble went as agent for Franklin, and also bearing a letter of instructions from Franklin to himself. Franklin joined Noble at Cairo, and went with him to Memphis, where he remained a few days and then returned to Chicago, leaving the business in charge of Noble. The latter sold the lumber partly for cash and partly on credit, taking the notes in his own name or that of Wells & Sears. The sales amounted to about $3,328, and exceeded by about $760, the money expended in saving the wreck

and the balance due Wells & Sears on the purchase of the lumber. Letters of administration were afterwards taken out by the defendant in error, who is the widow of Miller. She then brought the present action of trover against Wells, Sears and Noble, on the theory that the lumber, in being taken from the wreck to Memphis, was brought on the Illinois side of the river, and within the jurisdiction of this State, and that the title of the administratrix thus attached by relation. The jury found a verdict against Wells & Sears for $2,100, and they bring the case to this court.

On the trial, the defendants called Franklin Miller as a witness, and proved by him, that shortly before his father's death on the barge, the latter executed and gave to the witness, a written instrument for the purpose of transferring the lumber to him. The witness testified that he did not know where this instrument or bill of sale was, and that he believed it to be lost, and the defendants' counsel then offered parol evidence of its contents. This evidence the court excluded. After the verdict, the defendants moved for a new trial for the reason, among others, that the witness, after the trial, had found the bill of sale, and a copy of it is set out in the affidavits filed with the motion. It is thus brought before us, and is as follows :

" For and in consideration of past services, and a sum of money received of Harvey Huntoon, of Aurora, I hereby sell and deliver to my son, Franklin R. Miller, all my right, title and interest of the barge St. Louis, and a cargo of lumber now on said barge, lying near Commerce, Missouri, said Franklin R. Miller to have and hold the barge and cargo, and when sold, to pay Wells & Sears the amount of their bill due on the lumber.

                                        J. C. MILLER.
Commerce, Mo., May 5."

It cannot be denied that, as the record now stands, this instrument was very material evidence for the defendants. There is nothing in the facts before us to taint it with fraud,

even if the administratrix could be permitted to impeach it on that ground. The proof shows that Franklin was at the time twenty seven years of age; that he was in the service of his father, and that he had advanced some money of his own for the purchase of the barge. If his father was indebted to him, as the bill of sale admits, and the record tends to show, it was in the power of the former to transfer to him the title of the lumber by an instrument of this character, and to charge the property in his hands with the payment of the debt due upon it to Wells & Sears. A written instrument was not, it is true, necessary to a transfer of the property in payment of a debt due Franklin, if there was a delivery of the possession for that purpose, but inasmuch as there was a written instrument, showing the precise character of the transaction, and tending to show such a delivery of possession as the circumstances of the parties and the situation of the property admitted, it was very material to the defendants to be permitted to prove the contents of such instrument. For the evidence shows that Franklin accepted this transfer with its attendant trust, and acted in conformity with it. He proceeded to Chicago, sent down Noble as " his agent," to take charge of the property, and permitted him to receive the proceeds for the payment of the debt due Wells & Sears. Their debt being overpaid by the proceeds, he can make them account to him for the residue. By this transaction, so far as now appears, the title to the lumber passed to Franklin. He had charge and virtual possession of the property when the instrument was executed, and through agents, continued in such possession, except so far as he permitted Noble to sell for the purpose of paying the debt charged upon the property. The administratrix, therefore, never acquired title by her letters of administration.

This instrument being thus material, it remains only to inquire whether the court erred in excluding parol evidence of its contents. It is urged that there was a want of due diligence on the part of the defendants—that a subpœna

*duces tecum* should have been issued and a search made for the instrument then supposed to be lost, but afterwards found. If the instrument had ever been in the custody or under the control of the defendants, it would have been incumbent on them to make diligent search among their own papers before offering the parol evidence. But it was not an instrument which the law would presume to be, and the proof showed it never had been, in their custody. Neither was it in their power to compel the witness to make diligent search. A subpœna *duces tecum* would have been necessary if the evidence of the witness, when placed upon the stand, had not shown that the *duces tecum* clause would have been unavailing. He testified that he went to Kentucky some months before and took all his papers with him, that he afterwards looked them over and did not find this one; that he had written for it to Kentucky, and it could not be found, and that, so far as he knew, it was lost. The court below ruled that the deposition of the custodian in Kentucky should have been taken, but it does not appear that these defendants knew there was a custodian of the witness' papers, nor did that fact appear on the trial.

The witness swore that he had never seen the paper since the July following his father's death, a period of more than three years, and that his impression was, he had burned it. The defendants had no means of information before the trial, as to the locality of this paper, except such as the witness chose to give them, and when interrogated by them it is to be presumed he stated what he swore on the trial — that he had looked over his papers and did not find the instrument in question, and so far as he knew, it was lost. The defendants were obliged to accept the statements of the witness, and could go no further, and we can perceive in them no want of the requisite diligence. It is not of course proper to look at the statements of the affidavits for a new trial, in considering the decision of the court excluding parol evidence on the trial, but it is proper to remark that the fact that the paper was soon after found does not impeach the statement

of the witness, as to its supposed loss, inasmuch as it appears to have been finally found in Kentucky, in the pocket of an overcoat which the witness had not worn for two years, and was not among his papers.

We are of opinion that there was error in excluding from the jury parol proof of the contents of this instrument. In the view we have taken of the case it is not necessary to consider the other points raised. The judgment is reversed and the cause remanded.

*Judgment reversed.*